No. 23-1279

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

DEVIN SEATS,

*Petitioner-Appellant,*

v.

ANTHONY WILLS,

*Respondent-Appellee.*

_____

On Appeal from the United States District Court for
the Southern District of Illinois, Case No. 3:21-cv-1221
Staci M. Yandle, *United States District Court Judge*

_____

## REPLY BRIEF FOR
## PETITIONER-APPELLANT DEVIN SEATS

_____

Christopher Pagliarella
 *Counsel of Record*
Christopher DiPompeo
David Wreesman
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
202-879-3939
cpagliarella@jonesday.com

*Court-Appointed Counsel for
Petitioner-Appellant Devin Seats*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES .........................................................................ii

INTRODUCTION ......................................................................................... 1

ARGUMENT .................................................................................................. 4

I.    Seats's Petition Was Timely................................................................. 4

    A.   Seats diligently sought vacatur of his convictions and timely filed a habeas claim based on those vacaturs. ...................................................... 4

    B.   The State's diligence arguments use a mistaken timeline.......................... 7

    C.   The timeliness question was preserved below. .......................................... 12

    D.   The factual predicate of Seats's habeas claim is the vacatur of his convictions. ................................................................................................ 15

    E.   There is no dispute that Seats's claim based on the AHC vacatur is timely. ....................................................................................................... 17

II.   Seats Has Shown A Due-Process Right to Resentencing................................. 18

    A.   The State misstates the clearly-established right. ..................................... 18

    B.   The State's cases do not disturb this Court's well-settled conclusion that Seats's claimed right is clearly established......................................... 22

    C.   The Illinois appellate court both unreasonably applied Supreme Court precedent and made unreasonable factual determinations, including by failing to decide a key issue................................................... 23

CONCLUSION.............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambrose v. Roeckeman,*
749 F.3d 615 (7th Cir. 2014) ..................................................................... 6

*Arreola-Castillo v. United States,*
889 F.3d 378 (7th Cir. 2018) .................................................................... 12

*Ben-Yisrayl v. Buss,*
540 F.3d 542 (7th Cir. 2008) ............................................................... 18, 19

*Bryan v. Brandon,*
228 F. App'x 578 (6th Cir. 2007) .............................................................. 20

*Clark v. Pennsylvania,*
892 F.2d 1142 (3d Cir. 1989) ................................................................... 20

*Crank v. Duckworth,*
905 F.2d 1090 (7th Cir. 1990) .................................................................. 20

*Custis v. United States,*
511 U.S. 485 (1994) ................................................................................. 21

*Daniels v. United States,*
532 U.S. 374 (2001) ................................................................................. 16

*Gish v. Hepp,*
955 F.3d 597 (7th Cir. 2020) .................................................................... 24

*Green v. Johnson,*
2009 WL 2225483 (E.D. Va. June 29, 2009).......................................... 17, 21

*Green v. Johnson,*
2009 WL 2225105 (E.D. Va. Jul. 21, 2009)............................................... 17

*Hammonds v. Johnson,*
2010 WL 2244389 (W.D. Va. Apr. 29, 2010)............................................. 21

*Hammonds v. Johnson*,
  2010 WL 2244389 (W.D. Va. June 2, 2010) ............................................ 21

*In re N.G.*,
  115 N.E.3d 102 (Ill. 2018) ....................................................*passim*

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
  256 F.3d 548 (7th Cir. 2001) ................................................ 14

*Jackson v. Miller*,
  260 F.3d 769 (7th Cir. 2001) ................................................ 19

*Johnson v. United States*,
  544 U.S. 295 (2005) ............................................................*passim*

*Johnson v. Williams*,
  568 U.S. 289 (2013) ................................................................ 9

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ................................................................ 13

*King v. Emmons*,
  144 S. Ct. 2501 (2024) ........................................................ 24

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995) ............................................................ 14

*Lewis v. Lane*,
  832 F.2d 1446 (7th Cir. 1987) ............................................ 19

*Lewis v. United States*,
  445 U.S. 55 (1980) .............................................................. 23

*Lo v. Endicott*,
  506 F.3d 572 (7th Cir. 2007) ........................................ 15, 16

*Miller-El v. Cockrell*,
  537 U.S. 322 (2003) ............................................................ 24

*Moore v. Madigan*,
  702 F.3d 933 (7th Cir. 2012) ............................................ 8, 9

*Narvaez v. United States,*
674 F.3d 621 (7th Cir. 2011) .................................................. 20

*People v. Aguilar,*
2 N.E.3d 321 (Ill. 2013) .................................................. 4, 9

*People v. Barefield,*
132 N.E.3d 895 (Ill. App. Ct. 2019) .................................................. 22

*People v. Burns,*
4 N.E.3d 151 (Ill. App. Ct. 2013) .................................................. 8

*People v. Burns,*
79 N.E.3d 159 (Ill. 2015) .................................................. *passim*

*People v. Matthews,*
213 N.E.3d 992 (Ill. App. Ct. 2022) .................................................. 6

*People v. McFadden,*
61 N.E.3d 74 (Ill. 2016) .................................................. 5

*People v. Pierce,*
2020 WL 1082390 (Ill. App. Ct. Feb. 10, 2020) .................................................. 2, 5, 10

*People v. Smith,*
49 N.E.3d 885 (Ill. App. Ct. 2016) .................................................. 4

*Pepper v. United States,*
562 U.S. 476 (2011) .................................................. 23

*Promotor v. Pollard,*
628 F.3d 878 (7th Cir. 2010) .................................................. 18, 23

*Purvis v. United States,*
662 F.3d 939 (7th Cir. 2011) .................................................. 16

*Rosales-Mireles v. United States,*
585 U.S. 129 (2018) .................................................. 14, 15

*Saviano v. Comm'r,*
765 F.2d 643 (7th Cir. 1985) .................................................. 13

*Simonson v. Hepp,*
  549 F.3d 1101 (7th Cir. 2008) ................................................................. 18

*Smith v. Farley,*
  25 F.3d 1363 (7th Cir. 1994) ................................................... 18, 19, 20

*Stewart v. Erwin,*
  503 F.3d 488 (6th Cir. 2007) .......................................................... 20, 21

*Todd v. Schomig,*
  283 F.3d 842 (7th Cir. 2002) ................................................................. 18

*Townsend v. Burke,*
  334 U.S. 736 (1948) ..................................................................... 18, 25

*Trump v. Hawaii,*
  585 U.S. 667 (2018) .............................................................................. 22

*United States v. Bagley,*
  837 F.2d 371 (9th Cir. 1988) ................................................................. 20

*United States v. Pettiford,*
  101 F.3d 199 (1st Cir. 1996) ................................................................. 20

*United States v. Roque-Espinoza,*
  338 F.3d 724 (7th Cir. 2003) .......................................................... 12, 14

*United States v. Sanders,*
  909 F.3d 895 (7th Cir. 2018) .......................................................... 19, 21

*United States v. Tucker,*
  404 U.S. 443, 448 (1972) ................................................. 18, 22, 24, 25

*Williams v. New York,*
  337 U.S. 241 (1949) .............................................................................. 24

*Wilson v. United States,*
  413 F.3d 685 (7th Cir. 2005) .......................................................... 11, 12

**STATUTES**

28 U.S.C. § 2244 ............................................................................... *passim*

28 U.S.C. § 2254........................................................................ 24, 25

28 U.S.C. § 2255.......................................................................... 1, 7

**OTHER AUTHORITIES**

*Black's Law Dictionary* (12th ed. 2024) ..................................... 22

2 R. Hertz & J. Liebman, *Federal Habeas Corpus Practice and
   Procedure* § 32.4 (7th ed. 2023).............................................. 24

# INTRODUCTION

Devin Seats's argument for timeliness is simple. He claims the vacatur of three convictions discussed at his sentencing—two prior aggravated unlawful use of a weapon (AUUW) convictions vacated in 2019, and a concurrent armed habitual criminal (AHC) conviction vacated in 2020—triggered his right to resentencing under the Due Process Clause. He timely sought habeas relief within an untolled year of those orders "start[ing] the one year running" under 28 U.S.C. § 2244(d)(1)(D). *Johnson v. United States*, 544 U.S. 295, 308 (2005).

His argument that he "show[ed] due diligence in seeking" vacatur is simple too. *Id.* at 302. Seats filed a *pro se* postconviction petition to recognize the convictions as void in December 2016. That date was (1) just a year after the Illinois Supreme Court held (in *Burns*) that both relevant AUUW convictions were unconstitutional, and (2) well *before* that court (in *N.G.*) established that *Burns* was retroactive for all purposes. *People v. Burns*, 79 N.E.3d 159 (Ill. 2015); *In re N.G.*, 115 N.E.3d 102 (Ill. 2018). So assuming *Johnson*'s diligence rule applies, Seats sought vacatur before, or at worst within a year after, any duty of diligence was triggered.

The State's response is telling for what it does *not* argue. It does not dispute that state-court vacatur may be a "fact" under § 2244(d)(1)(D), as under § 2255(f)(4). It does not dispute (and agreed below, *see* Opening Br. 27) that diligence does not require action before precedent shifts the law in one's favor. And it does not dispute that a year-or-less delay (if one existed) between a favorable change of law first being announced, and a petition seeking vacatur, would be adequately diligent.

Nevertheless, the State argues Seats was not diligent as to his AUUW convictions because Seats *obtained* those vacaturs four years after *Burns*. But as the State conceded in state court, Seats's postconviction petition filed three years earlier was a proper means for pursuing vacatur. The State's argument only shows Seats was *especially* diligent, seeking *pro se* to obtain vacatur through other means once his counseled postconviction proceedings *also* seeking vacatur became extensively delayed. And even that second means was *still* within a year of *N.G.*—which overturned a decision, *McFadden*, that the State had understood to stand "for the proposition that a court could still consider an unconstitutional conviction for sentencing purposes if a defendant had not moved to vacate the conviction." *People v. Pierce*, 2020 WL 1082390, at *3 (Ill. App. Ct. Feb. 10, 2020). The State's noncommittal suggestion that decisions *before Burns* (let alone *N.G.*) might have triggered a duty to file conflicts with both those cases' holdings *and* the State's contemporaneous position on those holdings. So Seats was plainly diligent, even before considering case-specific factors (like extraordinary prison restrictions) that this Court has found to favor prisoners in diligence inquiries.

The State's two other timeliness arguments stumble on the facts. *First*, the State claims that district-court counsel failed to expressly argue that Seats's petition was timely under 28 U.S.C. § 2244(d)(1)*(D)*, foreclosing Seats from noting that sub-subsection's applicability. But this Court identified the issue in its Certificate of Appealability for good reason. The State's briefing below *did* raise whether § 2244(d)(1)(D) applied and presented the relevant facts, such that the issue was

pressed and preserved by the party whose burden it was to raise the affirmative defense of timeliness. In any event, Seats's original petition sufficiently addressed this basis for timeliness.

*Second*, the State asserts that Seats's vacaturs are not a factual predicate for his claim. But as the Certificate of Appealability understood, Seats claims the vacaturs are *the* facts that provide a clearly-established right to resentencing cognizable in habeas review. In state court, Seats sought *both* vacatur *and* sentencing relief upon those convictions being recognized as void. Seats would not have been able to pursue that joint path in federal court, given well-established barriers on such collateral challenges.

At a minimum, the Court should recognize Seats's claim arising from the AHC conviction's vacatur is timely, where the State *agrees* that vacatur was foreclosed until *N.G.* issued during postconviction proceedings—expressly waiving any dispute.

Once the Court finds Seats's petition timely, it should exercise its discretion to reach the merits of his claim given the brief time left on his sentence. This Court and others have repeatedly applied *Townsend* and *Tucker* outside the right-to-counsel context, and the State's absence of contrary authority is telling. The State's (mistaken) distinction that Seats's convictions were "constitutional at the time entered" contradicts *Tucker*. On the facts, it is beyond dispute that attention was given to the vacated convictions at sentencing. Indeed, the State (like the postconviction court) provides no alternate explanation of the sentencing judge's

*exceedingly* clear statement in the post-sentencing proceedings that he considered the now-vacated AUUW convictions.

This Court should find Seats's petition timely and grant habeas relief, or at a minimum, remand for consideration of the merits in the first instance.

## ARGUMENT

### I. Seats's Petition Was Timely.

#### A. Seats diligently sought vacatur of his convictions and timely filed a habeas claim based on those vacaturs.

Seats was convicted on three criminal counts for a 2011 shooting, including one armed habitual-criminal count. His two 2007 AUUW convictions (one Class 2, one Class 4) were expressly raised and discussed at sentencing, Opening Br. 6-7, highlighted in the presentencing report, and formed the predicate of his AHC conviction. Only a year later did the Illinois Supreme Court determine that Class 4 AUUW convictions (like the one forming the shorter of the concurrent 2007 sentences) were invalid, *People v. Aguilar*, 2 N.E.3d 321 (Ill. 2013). Only three years later—just after denying review in Seats's case—did it recognize them both as invalid in *Burns*.

Neither *Aguilar* nor *Burns* (direct appeals) stated a right to retroactive relief as to non-AUUW convictions and sentences predicated on invalid AUUW convictions. As discussed, Opening Br. 29-32, the law on *that* question shifted for years:

- In February 2016, an intermediate state appellate court granted resentencing to a person sentenced with consideration of prior Class 2 and Class 4 AUUW convictions. Opening Br. 29 (citing *People v. Smith*, 49 N.E.3d 885 (Ill. App. Ct. 2016)).

- However, in June 2016, the Illinois Supreme Court held in *People v. McFadden* that a conviction predicated on an invalid AUUW conviction was still itself valid if the invalid conviction was not then vacated. 61 N.E.3d 74, 83 (Ill. 2016). As the State agrees, Resp. Br. 24, *McFadden* barred Seats from vacating his AHC conviction. Further, *McFadden* undermined the premise that Seats should be treated "as if [the] underlying statute was never operative." 61 N.E.3d at 88 (Kilbride, J., dissenting in part). Illinois court records show the State subsequently took the position that "*McFadden* stood for the proposition that a court could still consider an unconstitutional conviction for sentencing purposes if a defendant had not moved to vacate the conviction." *Pierce*, 2020 WL 1082390, at *3. That rule would have *flatly barred* Seats from invoking any later vacatur of his 2007 AUUW convictions to obtain resentencing.

- In a June 2018 decision—made final after denial of rehearing in December 2018—the Illinois Supreme Court "overruled" *McFadden*. *N.G.*, 115 N.E.3d at 134. This case is the best definitive trigger of Seats's duty of diligence, because it established (albeit through another context) that *any* use of an unconstitutional AUUW conviction for *any* purpose was unlawful whenever it took place—including support for another conviction or sentence. Opening Br. 30-31.

But Seats did *not* wait until *N.G.* to seek vacatur of his convictions. Rather, he filed a *pro se* postconviction petition in December 2016, *before N.G.*, even though

the law after *McFadden* stood against him (particularly on vacating his AHC conviction). That petition sought to recognize his AUUW convictions as "void." A90; Resp. Br. 8. Both Seats's appellate counsel *and the State* recognized that the 2016 petition brought and preserved a claim to vacate the 2007 AUUW convictions. A111; Dkt. 60, Ex. 5 at 8 (only the claim to vacate the AHC count was brought "for the first time on appeal" after *N.G.* allowed the claim).[1] As *N.G.* emphasized, Illinois courts may "vacate [a prior] void judgment" whenever the judgment's validity is at issue. 115 N.E.3d at 125; *see People v. Matthews,* 213 N.E.3d 992, 1007 (Ill. App. Ct. 2022).

But when these proceedings were delayed, Seats filed a second *pro se* proceeding under another Illinois-law provision in July 2019, obtaining vacaturs of his 2007 AUUW convictions in November 2019. Dkt. 60, Ex. 6 at 2.[2] However, at no time did Seats's postconviction appellate counsel abandon his claim for vacatur in the postconviction proceeding. Thus, Seats was consistently pursuing vacatur of his 2007 AUUW convictions from December 2016 onward. And his postconviction counsel pursued vacatur of his concurrently-entered 2012 AHC conviction as soon as *N.G.* removed the barrier to that claim.

When those vacaturs issued, the federal-court habeas deadline was automatically tolled due to pending postconviction proceedings. 28 U.S.C.

---

[1] The parties' mutual understanding accorded with the ordinary rules of reading pro se filings liberally. *Ambrose v. Roeckeman*, 749 F.3d 615 (7th Cir. 2014).

[2] The State's exhibits rebut its statement that Seats "waited until November 2019" to make this parallel filing. Resp. Br. 28.

§ 2244(d)(2). Those proceedings concluded in November 2020, A46, and Seats's petition was docketed on October 6, 2021.

So Seats timely filed, and assuming *Johnson*'s diligence requirement applies, he was diligent in pursuing vacatur. He filed well before state procedural law turned in his favor, and not long after *Burns* concluded that Class 2 AUUW convictions were even *prospectively* unlawful. And the State never argues that seeking vacatur within (at most) a year of a legal change in one's favor would not be diligent.

Rather, the State's tripartite arguments against finding the petition timely rely not on disputed legal rules, but misunderstandings of (1) when Seats first brought a claim to vacate his convictions (for timeliness); (2) the arguments raised in the district court (for waiver); and (3) the nature of the due process claim (for the relevant factual predicate). Each assertion is readily corrected. And none of the State's three arguments contend that Seats's resentencing claim arising from *the AHC vacatur* is untimely.

### B. The State's diligence arguments use a mistaken timeline.

While the State resists the analogy between Seats's claim and the claim in *Johnson*, *see* Part I.D, it does not dispute that vacated convictions may be a "fact" for purposes of § 2244(d)(1)(D), just as under § 2255(f)(4) per *Johnson*. The State's claim that Seats has not met *Johnson*'s diligence requirement appears, then, to rely on a timeline mistake.

At the outset, to rule *against* Seats on diligence, the Court would have to hold that *Johnson*'s diligence analysis extends where it does not obviously apply. Opening

Br. 22-23. *Johnson* relied on the federal "interest in the finality of sentences imposed by its own courts." 544 U.S. at 309. No such interest justifies defining diligence in seeking vacatur more strictly than a state's timeliness rules for *state* sentences. Rather, "federalism and comity," Resp. Br. 27, *favors* leaving states "free to" choose whatever limits best "protect the integrity of their own judgments." *Johnson*, 544 U.S. at 316 (Kennedy, J., dissenting). But the Court may reserve this difficult question because Seats was diligent by any measure.

The State's argument, consistent with its district court filings, has been that a delay of *multiple* years from a change of law is too long. A28 (citing cases addressing "four-year" and "six-year" delays). It claims Seats only sought vacatur of his AUUW convictions in 2019, "four years after *Burns* was decided." Resp. Br. 28. But Seats's 2016 postconviction petition properly sought vacatur—as the State recognized at the time—which is relief that *N.G.* (decided after the postconviction petition, and which both parties cited in postconviction briefing, A108-09, Dkt. 60, Ex. 5 at 10-11) clearly confirmed as available in state postconviction proceedings. That proceeding was filed within a year of *Burns*, a length of time the State never argues would be delinquent.

The State noncommittally suggests a possible earlier date of diligence connected with *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), while conceding that decision left "uncertainty." Resp. Br. 25, 28. But the State argued in *Burns* (and the state appellate court *agreed*) that neither *Moore* nor *Aguilar* required holding the Class 2 offense unconstitutional because it related only to "restricting the possession or use of firearms by felons." *People v. Burns*, 4 N.E.3d 151, 157 (Ill. App. Ct. 2013).

Besides, Illinois law was settled in *favor* of the AUUW statute pre-*Aguilar*, as *Aguilar* noted, 2 N.E.3d at 326, and *Moore* did not bind Illinois courts in interpreting federal law, *see Johnson v. Williams*, 568 U.S. 289, 305 (2013). As explained, *Johnson* does *not* require suit before a claim is legally available. Opening Br. 32-34.

Further, *Moore* was quite different from the conviction challenges of *Aguilar* and *Burns*. It prospectively challenged the *entirety* of Illinois's gun-control law as "a flat ban on carrying ready-to-use guns" in light of its "meager exceptions," 702 F.3d at 940. Judge Posner's opinion did not decide any precise constitutional limits, but instead issued an immediately-stayed injunction so that "the Illinois legislature [could] craft a new gun law that will impose reasonable limitations" going forward. *Id.* at 942. By its terms, *Moore avoided* anything but prospective impact.

On *Aguilar*, the State never suggests *Aguilar* gave Seats legal authority to vacate his Class 2 conviction, but suggests it provided "authority to vacate his Class 4 felony conviction immediately." Resp. Br. 28. As explained, the State incorrectly assumes that *Aguilar* was sufficient (before *N.G.*) to permit Illinois post-conviction proceedings for relief against sentences considering prior Class 4 convictions. Opening Br. 24-34. And even if *Aguilar* had been so broad, it would of course not make *this* action untimely, given that it relies on *both* convictions (and the AHC conviction) being vacated.[3]

---

[3] Further, it is unclear that *Aguilar* necessitated, pre-*Burns*, vacating *Seats's* Class 4 conviction. Since the sentencing judge found proof of a prior felony in the same proceeding, the State might have sought to salvage the Class 4 conviction by adjusting it to a second Class 2 conviction. The State originally sought a similar adjustment of the AHC conviction vacated here. Dkt. 60, Ex. 5 at 13-14.

That assumption points to another flaw in the State's diligence analysis. The State does not contest that, where a procedural bar exists to using a vacatur to obtain sentencing relief, a petitioner need not seek vacatur before that bar is lifted. *See Johnson*, 544 U.S. at 308-09 (diligence triggered when the "interest in challenging the prior conviction" so as to lessen "the later sentence"—and the "significance of inaction"—is clear). But while the State argues that *N.G.* was unnecessary to permit a resentencing claim after *Burns*, the State does not point to *any* alternative, earlier case establishing that right.

The best the State can do is argue that *McFadden* (which was decided *after Burns*) "says nothing of the prerequisites to raising petitioner's sentencing claim." Resp. Br. 24. This is surprising, because that is not how it understood *McFadden* at the time. Rather, the State told courts before *N.G.* that "*McFadden* stood for the proposition that a court could still consider an unconstitutional conviction for sentencing purposes if a defendant had not moved to vacate the conviction." *Pierce*, 2020 WL 1082390, at *3. A *pro se* prisoner has no duty to *guess* that the law was other than the State's own reasonable understanding.

Certainly, the State could not argue the law was *settled* pre-*N.G.* as to *Burns*'s retroactivity, given that intermediate appellate courts treated its impact on sentences relying on past AUUW convictions as a novel issue. Opening Br. 29-30. That Seats acted in reliance on one such appellate decision before the law actually turned in his favor *proves* his diligence. *Id.* His July 2019 efforts to obtain vacatur likewise do not undermine his postconviction petition as a proper means to seek vacatur; they merely

show Seats's diligence to pursue, *pro se*, alternate paths while his counseled postconviction proceedings were delayed. And if *N.G.* (finalized on denial of rehearing in December 2018) triggered his duty of diligence, *even* those July 2019 efforts would be clearly diligent.

Because Seats was diligent on the legal timeline alone, the Court need not rely on further factors to find diligence. But as explained, engagement in one's direct appeal or heightened prison segregation that dramatically limits access to legal resources—which Seats faced here—can excuse some delay in a diligence assessment. Opening Br. 34-36. The State conflates this argument with equitable tolling, and its response is mostly that *equitable tolling* is outside the Certificate of Appealability's scope and waived (which is both incorrect and beside the point).[4]

But these arguments support *diligence* under *Johnson* as well, and the limits Seats described (particularly as to any access to legal resources) have been recognized by this Court as *beyond* the "impediments inherent in prison life," Resp. Br. 30; *see* Opening Br. 34-37. In asserting it is too late to build a record, the State ignores that where a *Johnson* diligence question is presented and "there [is] an explanation on offer but *in need of record support*," "remand would be appropriate." *Wilson v. United*

---

[4] Seats does not need equitable tolling because he filed within an untolled year of vacatur, and need only (at most) show diligence in pursuing vacatur. Opening Br. 38. But the State's argument that equitable tolling cannot be considered here or on remand is unpersuasive. The district court cognized that equitable tolling applied to the deadline, and the State briefed equitable tolling. RSA4-5; A29; Opening Br. 37-38. And Seats sought to put the circumstances supporting equitable tolling before the district court. A167-68, A174-76. The Certificate of Appealability's scope does not exclude reference to other grounds of timeliness, only that counsel *must* address *Johnson*'s applicability.

*States*, 413 F.3d 685, 688 (7th Cir. 2005) (emphasis added).  That rule has particular force where Seats attempted to put this information before the district court after its ruling, albeit in the form—owing to his *pro se* status—of certificate of appealability filings.  A167-68; *see* A174-76.  So if this Court determines that Seats's timeliness is in any way dependent on his conditions of confinement, remand would be appropriate.

### C.    The timeliness question was preserved below.

"[Un]timeliness" is an "affirmative defense" to habeas relief that may be waived by the State.  *Arreola-Castillo v. United States*, 889 F.3d 378, 382 (7th Cir. 2018).  Here, the State moved to dismiss the petition as untimely under § 2244(d), "whether calculated under either subsections (A) or (D)."  A26.  It gave nearly equal space to both bases of timeliness.  A26-A29.  It spelled out the factual predicate that could trigger § 2244(d)(1)(D) (the vacaturs), A28, appraised the court that the duty of diligence was likely not triggered until the law changed in Seats's favor, *id.*, and included the details of Seats's postconviction filings, cross-referencing those filings and including them in the accompanying exhibits, A22-23.  In sum, "[t]he district judge was plainly able to discern" both the State's argument on untimeliness under § 2244(d)(1)(D) and the key underlying facts for and against its argument; asserting the argument was "underdeveloped" is not the same as showing it was "forfeit[ed]."  *United States v. Roque-Espinoza*, 338 F.3d 724, 727 (7th Cir. 2003).  And this Court properly recognized this issue on the face of the record, directing the parties in its Certificate of Appealability to brief the § 2244(d)(1)(D) issue fully presented below.

Tellingly, the State's authorities suggest only that an argument must be "raised … in briefing before the district court" to be considered on appeal.  Resp. Br.

17 (citation omitted). By contrast, holding that a party cannot address a briefed legal question on appeal absent further preservation of counterarguments would be unworkable. A district court implicitly adopting or assuming an incorrect legal rule from an uncontested motion—or even a single *argument* that the other side left unaddressed—would never be subject to appellate review. But that is not the case. "When an issue or claim is properly before the court," a party does not "waive[] her right to the application" of the proper legal rule by "fail[ing] to advert" to the right body of law. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Even when parties *agree* on a legal error assumed by the trial court, an appellate court may correct that premise on appeal. *See Saviano v. Comm'r*, 765 F.2d 643, 645 (7th Cir. 1985).

So it is unnecessary to parse Seats's original habeas petition to find if Seats's district-court counsel presented a § 2244(d)(1)(D) argument against untimeliness. But such parsing still favors Seats, because the basic argument that timeliness is measured from the untolled time after the vacaturs *was* presented below. While the State says "petitioner's counseled habeas petition asserted that it was timely under subsection (A)," Resp. Br. 17, its citation, A12, never mentions a particular subsection of § 2244(d). Rather, it states that the claim "arose, not at the time of his initial sentencing hearing, but later, when two of his AUUW convictions became void." A12; *see* A17 (convictions "have now been ruled void"). That indicated that the timeliness argument was based on those vacaturs as factual predicates. Certainly, the State cognized the argument enough to respond in its motion to dismiss. A27-29. The

habeas petition also indicated why the claim based on the AHC conviction was timely—that it was "vacated" during the postconviction proceedings. A16. The petition's attempt to further argue about when sentencing decisions are considered "final" does not undo its clear reference to the vacaturs as triggering the claim.

Even if Seats's counsel had (counterfactually) cited expressly and only to § 2244(d)(1)(A) to explain timeliness, the State could at most claim Seats is offering "a new argument to support what has been his consistent claim"—that his habeas petition was timely. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995). And failing to point to the "right body of law" to link the facts with the legal claim does not limit appellate review. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) ("Federal courts are entitled to apply the right body of law, whether the parties name it or not.").[5]

As a coda, the State's argument that Seats somehow forfeited his *ability* to *invoke* § 2244(d)(1)(D) to *rebut* an affirmative defense relying on that provision below would still have to contend with plain-error review (since its argument is clearly forfeiture, not waiver, *see Roque-Espinoza*, 338 F.3d at 727). When a plain error affects a petitioner's substantial rights, and prevents correction of errors as to his "criminal history" that may have produced a heightened sentence, it undermines "the public legitimacy of our justice system" as necessary for plain-error relief. *Rosales-*

---

[5] The State also provides no case support for its drive-by claim that diligence sufficient to make a petition timely (under *Johnson* or even under equitable tolling) can somehow be undone by *later* litigation conduct. *See* Resp. Br. 18-19. Nothing in § 2244(d) suggests post-filing conduct can make a timely petition untimely.

*Mireles v. United States*, 585 U.S. 129, 140-41 (2018). But many reasons the error here would be plain—that the applicability of § 2244(d)(1)(D) was clear on the face of Seats's habeas petition, and the State's motion to dismiss and attachments, just as it was clear to this Court when issuing a certificate of appealability—just demonstrate that the basis of the response on timeliness *was* presented to the district court such that forfeiture, let alone waiver, is not at issue.

### D. The factual predicate of Seats's habeas claim is the vacatur of his convictions.

*Johnson* holds that a resentencing claim based on the "vacatur of a prior state conviction used to enhance a federal sentence" makes that vacatur necessarily among the "facts supporting the claim or claims presented." 544 U.S. at 302-04 (Court has taken as granted "that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated"). Here, Seats's claim— as the Certificate of Appealability correctly stated—also relies on his vacaturs: "a constitutional right to resentencing when prior convictions … used to enhance a sentence are later vacated as unconstitutional." A207; *see* A206 ("whether due process required [resentencing] after the vacatur of prior convictions"). Importantly, *Johnson* distinguished an order of vacatur from "a mandate of law" that could not be a factual predicate, since an order's *existence* "is subject to proof or disproof like any other factual issue." 544 U.S. at 304, 307.

The State claims that the "vital fact[] underlying [Seats's] claim" was "that his 2007 AUUW convictions rested on an unconstitutional statute." Resp. Br. 16. But this legal claim is not "subject to proof or disproof." *Johnson*, 544 U.S. at 307; *Lo v.*

*Endicott*, 506 F.3d 572, 576 (7th Cir. 2007) ("state court decision modifying substantive law" not a factual predicate). After all, though the State claims this "fact" was available "*before* his 2012 conviction became final," Resp. Br. 16, the State was arguing in Illinois courts that Class 4, and then Class 2, convictions did *not* rest on an unconstitutional statute for *years afterward*.

More importantly, this alternative factual predicate misstates Seats's claim to resentencing when convictions enhancing a sentence "are later vacated as unconstitutional," *not* whenever the law applicable to those convictions has changed. Opening Br. 5 (Statement of the Issues). Whether the State believes *on the merits* that the vacaturs support a constitutional claim doesn't permit the State to reword the *basis* of the claim.

If Seats *had* claimed a clearly-established due-process right to resentencing based solely on a legal change, it would be in tension with *Daniels v. United States*, 532 U.S. 374 (2001), which generally holds for federal sentences "that only after an underlying conviction is vacated may a defendant seek relief in federal courts" based on its unconstitutionality (as discussed in Part II). *Purvis v. United States*, 662 F.3d 939, 943 (7th Cir. 2011); *see Johnson*, 544 U.S. at 305. Indeed, the State does *not* argue that Seats could have collaterally challenged his prior AUUW convictions via a federal habeas claim, though he could (and did) in state postconviction proceedings.

That difference illustrates the other error in the State's reasoning. The State claims that the vacaturs are not necessary facts because Seats brought postconviction litigation *before* the vacatur. Resp. Br. 20. But again, Seats's postconviction litigation

was seeking vacatur *within that proceeding*. Seats's initial *pro se* petition sought to have those convictions recognized as void; his appellate brief emphasized that vacatur was requested; and the State conceded that a vacatur claim was presented and meritorious. There is nothing "chronologically impossible," *id.*, about simultaneously requesting relief A, and requesting relief B based on the issuance of relief A.

### E. There is no dispute that Seats's claim based on the AHC vacatur is timely.

Seats sought, and obtained, vacatur of his AHC conviction within and during postconviction proceedings. The State concedes that *this* vacatur claim was unavailable at the time of filing, per *McFadden*. The State also does not dispute that the vacatur request was diligently brought at the earliest possible opportunity after *N.G.* made the claim available. As the deadline for a habeas claim based on the AHC vacatur was tolled by statute until postconviction proceedings concluded in November 2020, the habeas petition was clearly timely as to Seats's claim that *this* vacatur entitles him to resentencing.

Other than its concessions, the State leaves this claim unaddressed. And the clearly-established due process right here is equally applicable to either the vacatur of a prior conviction or a concurrently-entered conviction, when asserting the vacated conviction may have influenced the sentence. *See, e.g.*, *Green v. Johnson*, 2009 WL 2225483, at *6 (E.D. Va. June 29, 2009) (Section 2254 claim) (under *Tucker*, "if the court considered an unconstitutional conviction while sentencing on the remaining valid convictions, then due process requires a new sentencing hearing"), *R&R adopted*, 2009 WL 2225105 (E.D. Va. Jul. 21, 2009). So though Seats's full claim is

timely as explained above, Seats is entitled to *at least* recognition that the AHC-based claim is timely.

## II. Seats Has Shown A Due-Process Right to Resentencing.

### A. The State misstates the clearly-established right.

Seats has pressed that a sentence based in part on convictions vacated as unconstitutional violates the Due Process Clause. Nevertheless, the State says this claim does not "include convictions that have constitutional defects other than denials of the right to counsel" under *Gideon*. Resp. Br. 36-37. But this argument both misstates the law and is foreclosed by this Court's precedent.

This Court has repeatedly described the right at issue as the "constitutional due process right to be sentenced based on accurate information." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010); *see* Opening Br. 40-41. This description matches how the Supreme Court's own framing. In *Townsend v. Burke*, the Court found a due-process violation when a "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." 334 U.S. 736, 741 (1948). And *United States v. Tucker* explains that this logic applies not only to inaccurate summaries of a defendant's criminal history, but also to summaries that include convictions "unconstitutionally obtained." 404 U.S. 443, 448 (1972).

Based on this clear Supreme Court mandate, this Court has repeatedly stated (without limiting itself to *Gideon* violations) that if a sentence relies on "invalid convictions" or "misinformation," it must be vacated. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 555 (7th Cir. 2008); *Todd v. Schomig*, 283 F.3d 842, 853 (7th Cir. 2002); *see also Simonson v. Hepp*, 549 F.3d 1101, 1107 (7th Cir. 2008); *Smith v. Farley*, 25 F.3d 1363,

1371 (7th Cir. 1994) (Easterbrook, J., concurring) (summarizing holding) (once a conviction is vacated, "any sentence enhanced because of that conviction must be set aside, and the defendant must be resentenced"), *separate holding abrogated as recognized in Jackson v. Miller*, 260 F.3d 769 (7th Cir. 2001); *Lewis v. Lane*, 832 F.2d 1446, 1457 (7th Cir. 1987) (*Tucker* requires relief in cases involving "misinformation of a constitutional magnitude, *such as* uncounseled guilty pleas" (emphasis added)). At a minimum, this Court has said, it "is not controversial" that "a defendant given a a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is *vacated." United States v. Sanders*, 909 F.3d 895, 902 (7th Cir. 2018) (emphasis in original).[6]

This Court rightly applies this principle to cases having nothing to do with *Gideon*. For example, in *Ben-Yisrayl*, a petitioner claimed relief under *Townsend* and *Tucker* because two convictions relied on by his sentencing court were ruled invalid due to the prosecutor's references to his failure to testify at trial. 540 F.3d at 545, 553-55. Though this Court ultimately found that the invalid convictions had not affected the sentence, it agreed that the petitioner's claimed due-process right was clearly established, even though his convictions had been invalidated on Fifth Amendment grounds, not *Gideon. Id.* at 554-55; *see also Farley*, 25 F.3d at 1371-72

---

[6] The State mistakenly suggests that Seats contended that his habeas claim is "unusual" and only one court has "addressed an analogous factual scenario." Resp. Br. 32. Rather, Seats contended in his *diligence* argument that it is unusual for a state supreme court to *repeatedly reverse* itself on state procedural law—though the law that exists favors Seats. Opening Br. 25-27.

(Easterbrook, J., concurring) (claimed invalid conviction for *Boykin* violation); *Crank v. Duckworth*, 905 F.2d 1090, 1090 (7th Cir. 1990) (ineffective assistance of counsel).

And the Seventh Circuit is in good company; other federal courts have likewise applied and continue to apply the right more broadly than *Gideon* when adjudicating habeas petitions from state sentences.[7]  *See, e.g.*, *Clark v. Pennsylvania*, 892 F.2d 1142 (3d Cir. 1989) (resentencing required because sentence was based on prior void conviction that had been secured by denial of due process right to be tried as a juvenile).  In *Bryan v. Brandon*, the Sixth Circuit ordered resentencing for a state prisoner whose sentence was based on convictions later vacated for *Boykin* violations.  228 F. App'x 578 (6th Cir. 2007).  Tennessee argued that the sentence was based on the accurate fact of guilty pleas.  *Id.* at 584; *cf.* Resp. Br. 36-37 (claiming Seats's sentence was based on then-accurate information).  But the Sixth Circuit explained that "[a]lthough the facts of [*Townsend* and *Tucker*] differ somewhat from those at issue here, both cases stand for the proposition that *a sentence imposed on the basis of an erroneous prior conviction is constitutionally invalid*."  228 F. App'x at 584 (emphasis added); *see also Stewart v. Erwin*, 503 F.3d 488, 498-501 (6th Cir. 2007)

---

[7] Examples in the Section 2255 context are numerous.  *See, e.g.*, *United States v. Pettiford*, 101 F.3d 199 (1st Cir. 1996) (sentence reduction after state convictions vacated for  *Boykin* violation); *United States v. Bagley*, 837 F.2d 371, 376 (9th Cir. 1988) (remanding for resentencing where sentence considered conviction vacated under *Brady*; "[w]hen a constitutionally invalid conviction is used to enhance punishment for another offense, the individual is entitled to have the trial court reconsider the sentence"); *see also Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011) (mischaracterization as career offender was analogous to basing sentence "in part upon prior convictions that were later determined to be invalid," as in *Tucker*, justifying relief).

(remanding for consideration of *Townsend/Tucker* claim where "materially false information" about criminal conduct may have been presented about counseled defendant).

Likewise, in *Green*, the magistrate judge (as affirmed by the district judge) rejected the argument that *Custis* limited a *Tucker* claim to "failure to appoint counsel," concluding instead that *Custis affirms* that the proper approach to access the *Tucker* right for all invalid-conviction-considered claims, other than the failure to appoint counsel, is to bring the claim after vacatur. 2009 WL 2225483, at *6-7 (citing *Custis v. United States*, 511 U.S. 485, 496-97 (1994)). And in *Hammonds v. Johnson*, the magistrate judge (affirmed by the district judge) found it was "well established," even after *Custis* and *Daniels*, "that 'a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated,'" no matter the constitutional violation prompting the vacatur. 2010 WL 2244389, at *4 (W.D. Va. Apr. 29, 2010) (state-court vacatur for ineffective assistance), *R&R adopted*, 2010 WL 2232134 (W.D. Va. June 2, 2010); *see Sanders*, 909 F.3d at 902.

By contrast, the State offers *no* decision from any court, *anywhere*, agreeing with the limit it places on clearly-established law. Its one district court authority addresses a petitioner who sought to vacate a state *conviction* based on a prior *unvacated* state conviction challenged *collaterally* as void. Resp. Br. 37.

The State further says that *Townsend* and *Tucker* have never been applied where past convictions were "constitutional at the time they were entered" but later proved to be unconstitutional. Resp. Br. 33. Yet that is precisely *Tucker*'s fact

pattern: the sentencing judge "gave explicit attention to … three previous felony convictions," two of which were unconstitutional under *Gideon*. 404 U.S. at 444-45. Those two convictions occurred *decades* before *Gideon*. *See id.* So "the Supreme Court has [indeed] clearly established that it violates the Constitution for a sentencing court to consider convictions that were constitutional at the time they were entered, but which became unconstitutional due to a change in the law." Resp. Br. 33.

Plus, it is mistaken to describe Seats's AUUW convictions as "constitutional [until] a change in the law." Resp. Br. 14. Violations of the Constitution are violations at the time even if courts are slow to recognize them. *Cf. Trump v. Hawaii*, 585 U.S. 667, 710 (2018) ("*Korematsu* was gravely wrong the day it was decided ….."). And Illinois law characterizes invalid AAUW convictions as void ab initio, i.e., "[n]ull from the beginning." Void ab initio, *Black's Law Dictionary* (12th ed. 2024); *see, e.g.*, *People v. Barefield*, 132 N.E.3d 895, 899 (Ill. App. Ct. 2019).

### B. The State's cases do not disturb this Court's well-settled conclusion that Seats's claimed right is clearly established.

The Court's Certificate of Appealability asked the parties to address whether *Custis*, *Daniels*, and similar cases impact the clear establishment of the due-process right to be sentenced based on accurate information. The State does not meaningfully respond to Seats's arguments here. It does not disagree that *Custis* and *Daniels* focused only on the procedural right to collaterally attack a state-court conviction during federal sentencing proceedings, a context wholly unrelated to Seats's habeas petition. *See* Opening Br. 42-45. It also appears to concede that this Court treats

*Townsend* and *Tucker* as clearly established, even after *Custis* and *Daniels*. *See* Opening Br. 45-46.

*Lewis v. United States* is also inapposite. *See* Resp. Br. 34-35. *Lewis* expressly distinguishes its focus, for the statute at issue, on the "mere fact of conviction," from *Tucker*'s sentencing protection, or any questions of a conviction's "validity." 445 U.S. 55, 67 (1980). And *Johnson* expressly instructs that *Lewis* does not cast doubt on the proposition "that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated," 544 U.S. at 303. So *Lewis* does not call into question the "constitutional due process right to be *sentenced* based on accurate information." *Promotor*, 628 F.3d at 888 (emphasis added); *cf. Pepper v. United States*, 562 U.S. 476, 480 (2011) (sentencing relates to "the fullest information possible concerning the defendant's life and characteristics").

### C. The Illinois appellate court both unreasonably applied Supreme Court precedent and made unreasonable factual determinations, including by failing to decide a key issue.

The State's halfhearted defense of the Illinois appellate court's opinion fails to respond to almost all of Seats's arguments. Resp. Br. 38-39. Yet it fails to respond to almost all of Seats's arguments.

*First*, the State does not respond to, and thus appears to concede, the fact that the sentencing judge admitted to basing Seats's sentence in part on his void 2007 AUUW convictions. The sentencing judge analyzed only Seats's 2005 AUUW conviction when assessing his claim for resentencing. *See* Opening Br. 50-51. He stated that Seats's 2005 conviction did not matter because he had two AUUW

convictions from 2007 when sentenced.  Dkt. 50, Ex. B at R.230-31.  But those were the very convictions that have since been vacated.

This admission by the sentencing judge makes this an easy case.  The sentencing judge was in the best position to say what he relied on when imposing Seats's sentence.  The state court's failure to address this key fact, which the State's supplement shows was briefed by both parties, was unreasonable.  *See* A45; Dkt. 60, Ex. 5 at 11-12; Ex. 6 at 3-4.  The Supreme Court "has not hesitated to find AEDPA's standard satisfied when a state court's factfinding process disregards information that is highly relevant to a court's factual determination."  *King v. Emmons*, 144 S. Ct. 2501, 2504 (2024) (Jackson, J., dissenting from denial of certiorari) (collecting cases); *see Miller-El v. Cockrell*, 537 U.S. 322, 346 (2003) ("Our concerns are amplified by the fact that the state court also had before it, and apparently ignored, [key facts].");  Opening Br. 17, 49-51.  This Court has found Section 2254(d)(2) satisfied when a state court "disregard[s]" and "refus[es] to consider" proffered evidence supporting a claim.  *Gish v. Hepp*, 955 F.3d 597, 601, 604 (7th Cir. 2020); *see also* 2 R. Hertz & J. Liebman, *Federal Habeas Corpus Practice and Procedure* § 32.4 (7th ed. 2023) (Section 2254(d)(2) relief appropriate if "state court failed to make a factual determination" or "overlooked" evidence); *id.* n.12 (collecting cases).

*Second*, the State's reference to what the judge "relied heavily on," Resp. Br. 38, does not contest that a *Townsend* and *Tucker* violation is complete as a legal matter when a judge receives testimony from prosecutors regarding invalid convictions.  Resp. Br. 38; *see* Opening Br. 46-49, 51.  In *Tucker*, "explicit attention"

and "specific consideration" was shown merely by hearing a report on void convictions. 404 U.S. at 444 & n.1, 447 (citing *Townsend*, 334 U.S. at 741). That standard was met here—the State reported multiple unconstitutional convictions to the judge. Dkt. 50, Ex. A at R.213:18-19, 215-216; *cf.* Dkt. 60, Ex. 3 at 3.

*Third*, just as the State gives no response on the AHC vacatur for purposes of timeliness, *see supra* Part I.E, it does not address the Illinois postconviction court's failure to consider whether that concurrently entered (and now-vacated) count informed the sentence on the remaining counts, *see* Opening Br. 52.

*Last,* the State (Resp. Br. 31 n.7) misunderstands Seats's argument regarding his now-vacated conviction for failing to return from furlough. *See* Opening Br. 51. Seats does not fault the state court for not considering its *vacatur*—that was not part of the "evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). But just as the court could see that the AUUW convictions' vacatur invalidated the AHC conviction, it was unreasonable to not consider whether Seats's escape conviction was likewise invalid, before *relying on* the existence and validity of Seats's remaining convictions—including escape—to deny resentencing. Dkt. 50, Ex. A at R.218.

## CONCLUSION

For the above reasons, this Court should hold the petition timely, and reverse and remand with instructions to grant Seats's petition. In the alternative, this Court should hold the petition timely and remand as to the merits.

Dated: September 13, 2024

Respectfully submitted,

/s/ *Christopher Pagliarella*

Christopher Pagliarella
  *Counsel of Record*
Christopher DiPompeo
David Wreesman
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
202-879-3939
cpagliarella@jonesday.com

*Court-Appointed Counsel
for Petitioner-Appellant Devin Seats*

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as modified by Circuit Rule 32(c), because, as calculated by Microsoft Word 365, it contains 6,913 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This motion also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as modified by Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 12-point font, including footnotes.


Dated: September 13, 2024                       Respectfully submitted,

                                               */s/ Christopher Pagliarella*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 13, 2024, pursuant to Federal Rule of Appellate Procedure 25 and Circuit Rule 25(a), I electronically filed this Reply Brief of Petitioner-Appellant Devin Seats with the Clerk of Court of the U.S. Court of Appeals for the Seventh Circuit via the CM/ECF system and service was accomplished on counsel of record by that means.


Dated: September 13, 2024                    Respectfully submitted,

                                             */s/ Christopher Pagliarella*